## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **KB HOME,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3-04-CV-1031-L** |
| | § | |
| **ANTARES HOMES, LTD., ANTARES** | § | |
| **HOMES LLC, ANTARES GP, LLC,** | § | |
| **and RONALD F. FORMBY,** | § | |
| **an individual,** | § | |
| | § | |
| **Defendants.** | § | |

### MEMORANDUM OPINION AND ORDER

Before the court are: (1) Plaintiff's Motions for Partial Summary Judgment, filed December 18, 2006; (2) Defendants' Motion to Strike, filed January 24, 2007; and (3) Plaintiff KB Home's Objections to and Appeal from Magistrate Stickney's Order of January 25, 2007 Denying Plaintiff's Motion to Exclude the Testimony of Jim Sealy, filed February 7, 2007.  After consideration of the motions, responses, replies, objections, record, and applicable law, the court **grants in part** and **denies in part** Plaintiff's Motions for Partial Summary Judgment, **grants** Defendants' Motion to Strike, and **overrules** Plaintiff's Objections to and Appeal from Magistrate Stickney's Order.

### I.      Factual and Procedural Background

Plaintiff KB Home ("KB Home" or "Plaintiff") is an architectural design and home-building company that designs and builds residential developments.  It is the owner of a set of architectural floor plan designs for single-family homes.  KB Home has certificates of copyrights for the designs, and the drawings are deposited with the United States Copyright Office.  Defendants Antares Homes, Ltd., ("Antares Ltd."), Antares Homes LLC ("Antares LLC"), Antares GP, LLC ("Antares

GP") and Ronald F. Formby ("Formby") (collectively "Defendants") are also residential homebuilders.

Plaintiff alleges that in 1996, KB Home (known at that time as Kaufman & Broad) acquired Rayco[1] and all of Rayco's assets, including its copyrighted designs.  On March 1, 1997, KB Home hired Formby as Vice-President of Sales for the Dallas Division.  Formby's job was to take the old Rayco business model and implement it in the Dallas Division.  His responsibilities included working closely with Rayco employees in San Antonio, and dealing hands-on with old Rayco plans that KB Home began to sell in Dallas.  KB Home terminated Formby on September 30, 1998.  In December 1998, Formby established Antares Homes.

KB Home filed this lawsuit on May 12, 2004, alleging copyright infringement by Defendants.  It seeks a permanent injunction in addition to damages.  KB Home alleges that Formby copied six of Rayco's, now KB Home's, copyrighted designs, and created architectural technical drawings in "virtually all significant respects, including overall form arrangement and composition of spaces and elements."[2]  KB Home also alleges that Defendants "marketed single family homes by publishing simplified abridged plans, based on copies of the KB Home [c]opyrighted [d]esigns, in brochures and on the internet."  KB Home further alleges that Defendants "constructed, marketed and sold single family houses that were substantially similar to each of the KB Home [c]opyrighted

---

[1]Rayco was a homebuilder in San Antonio, Texas.

[2]The architectural blueprints are titled Plan H-2871-R1 Design ("plan 2871"), Plan H-3288-R1 Design, Plan H-3265-R1 Design ("plan 3265"), Plan H-2334-R3 Design, Plan 240.2162.A2R Design ("plan 240.2162.A2R"), and Plan 240.2693 Design ("plan 240.2693").  Plans 2871, 3265, 240.2162.A2R, and 240.2693 are referred to collectively as the "KB Homes plans."  The plans that Plaintiff alleges are infringing are referred to collectively as the "Antares plans."

[d]esigns with respect to, and without limitation, the overall form and the arrangement and composition of spaces and elements."

The court granted in part Defendants' motion for summary judgment on December 29, 2005, dismissing KB Home's claims with regard to Plan H-3288-R1 Design and Plan H-2334-R3 Design. This case was set for trial in September 2006, and the court held two pretrial conferences before vacating the trial setting. Plaintiff moved in limine to exclude Defendants' expert witness Jim Sealy. The court granted the motion and gave Defendants an opportunity to name a new witness or submit a new expert report. Defendants submitted a revised report from Jim Sealy, to which Plaintiff objected. United States Magistrate Judge Paul D. Stickney held a hearing on Plaintiff's Motion to Strike on January 22, 2007, and denied Plaintiff's motion on January 25, 2007. At the pretrial conferences, Plaintiff also sought leave to file a motion for partial summary judgment, which the court granted. That motion for partial summary judgment is now before the court.

## II.    Defendants' Motion to Strike

The court turns first to Defendants' Motion to Strike the appendix filed by Plaintiff in support of its motion for partial summary judgment. Plaintiff filed a 391-page appendix with its reply in support of its motion. Defendants argue that the appendix should be struck from the record because Plaintiff filed it without leave of the court. Plaintiff argues that the documents included in the appendix were provided for the court's convenience and pursuant to Rule 106 of the Federal Rules of Evidence.[3]

_____

[3]The court notes that the parties have engaged in a spirited debate about their opposition's violation of this court's Local Rules. These tit-for-tat exchanges are reminiscent of a kindergarten spat. The parties are to cease and desist such behavior. The court has grown weary of this conduct, and it serves no purpose other than to unnecessarily burden the record of this case and distract from the substantive issues.

**Memorandum Opinion and Order - Page 3**

The court declines to consider arguments for the first time in a reply brief.  *Spring Indus., Inc. v. American Motorists Ins.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991).  "It follows that a reply brief that presents dispositive evidence by way of new affidavits and exhibits deprives the nonmovant of a meaningful opportunity to respond."  *Id.*  In the *Spring Industries* case, Judge Fitzwater noted that where additional evidence could aid the court and prevent injustice, "the parties should agree to the filing of the reply brief and new supporting materials, as well as to the submission of a further response and a final reply brief."  *Id.* at 240.  Here, it is clear that the parties have not conferred, and Defendants ask not for a chance to file a surreply but to strike the appendix in its entirety.

The court determines that Defendants' motion should be and is hereby **granted.**  Plaintiff's motion for partial summary judgment was filed after several extensions of the trial date and was one of the reasons the court vacated the most recent trial setting.  Rather than further delay the trial of this matter by allowing Defendants a chance to respond and Plaintiff a chance to file a final reply, the court believes that the better solution is to **strike** the appendix and not consider the additional evidence submitted by Plaintiff in its consideration of the motion for partial summary judgment. Plaintiff could have filed this evidence with its motion for partial summary judgment.

### III.     Plaintiff's Motion for Partial Summary Judgment

#### A.     Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact

is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed

fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B.     Analysis

Plaintiff seeks summary judgment on four issues: (1) ownership of U.S. copyrights VAu 599-560, VAu 599-561, VAu 599-562 (the "Copyrights"); (2) validity of the Copyrights; (3) copying of plans 2871, 3265, 240.2162.A2R, and 240.2693; and (4) liability for infringement of the Copyrights. Defendants oppose Plaintiff's motion.

To establish a claim for copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original. *Positive Black Talk Inc. v. Cash Money Records, Inc.,* 394 F.3d 357, 367 (5th Cir. 2004) (citing *General Universal Sys. v. Lee,* 379 F.3d 131, 141 (5th Cir. 2004)). With respect to the first element, "[c]opyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities." *Eng'g Dynamics v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994). To establish the second element, a plaintiff must prove: (1) factual copying and (2) substantial similarity. *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir. 2003). Factual copying "can be prove[d] by direct or circumstantial evidence." *Id.* "As direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Peel & Co. v. The Rug Market,* 238 F.3d 391, 394 (5th Cir. 2001). If a plaintiff establishes an inference of factual copying (by showing access and probative

**Memorandum Opinion and Order - Page 6**

similarity), the defendant can rebut that inference, and thus escape liability for infringement, if he can prove that he independently created the work. *Id.* at 398.  If a plaintiff has established factual copying (and the defendant does not establish independent creation), the plaintiff must also prove that the copyrighted work and the alleged infringing work are substantially similar. *Bridgmon,* 325 F.3d at 577.  To answer the question of substantial similarity, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar. *Id.* at 576-77 (internal citation and quotation marks omitted).  The question of substantial similarity should typically be left to the fact finder; however, summary judgment may be appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression.  *Peel*, 238 F.3d at 395.

### 1.      Ownership of the Copyrights

Plaintiff argues that there is no dispute regarding KB Home's ownership of the Copyrights, and that even if there is, Defendants cannot raise ownership as a defense pursuant to section 204(a).  Defendants argue that Plaintiff has not proved ownership of the Copyrights as a matter of law and that KB Homes cannot rely on certain evidence proving ownership because it was not provided to Defendants in a timely manner.  This issue was also raised by KB Home in the pretrial materials.  KB Home filed a Motion in Limine to Preclude Defendants from Introducing Proof or Making Argument that KB Homes Does Not Have a Written Assignment of Certain Copyrights on September 20, 2006.  Defendants filed several responses to the motion in limine, on September 21, 2006, September 27, 2006, and October 13, 2006.  Plaintiff filed a reply in support of its motion in limine on October 27, 2006.  The court has not yet ruled on the motion in limine, but took the

motion under advisement.  Because the motion in limine is pending and because the parties have referenced or incorporated this briefing in the motion and response, the court considers the briefing on the motion for summary judgment and the motion in limine.

Section 204(a) provides: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 USC § 204(a).  Plaintiff argues that because Defendants are alleged infringers who are not parties to the copyright transfers, they cannot challenge these transfers.  Section 204(a) has three purposes: (1) to ensure that a copyright is not "inadvertently transferred;" (2) to ensure precisely "what rights" at "what price" are being transferred; and (3) to resolve later disputes.  *Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 420 F.3d 388, 392 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1653 (2006).

Under section 204(a), "[a]n after-the-fact writing can validate an agreement from the date of its inception, at least against challenges to the agreement by third parties."  *Id*. at 392.  In *Lyrick*, the court noted that "when courts have found the post-deal writing sufficient, the party challenging the writing has been an alleged infringer who is an outsider to the deal.  In that situation, courts are hesitant to allow an outside infringer to challenge the timing or technicalities of the copyright transfer."  *Id*. at 394 (internal citations omitted).

Defendants point out, however, that the cases cited by Plaintiff regarding section 204(a) and a third-party infringer's ability to challenge a post-deal writing considered the validity of the post-deal writing to codify an earlier *oral* transfer of copyright.  *See Lyrick*, 420 F.3d 388, 390-391 (noting that no formal written agreement had been signed); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) ("We recognize that 17 USC § 204(a) can

be satisfied by an oral agreement later ratified or confirmed by a written memorandum of the transfer.") (internal citation and quotation omitted); *Jack Preston Wood Design Inc. v. BL Bldg. Co.*, No. H-03-713 (S.D. Tex. June 24, 2004), 14 ("17 USC § 204(a) can be satisfied by a written document memorializing or ratifying a prior oral assignment. . . .  Courts have also held that a writing memorializing an earlier oral agreement between a copyright owner and transferee, signed by both parties, cures defects in standing, even if executed after a suit challenging the copyright was filed."); *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, (7th Cir. 2003) (nunc pro tunc copyright assignment signed after oral agreement); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) (considering later written ratification of an "informal understanding").

While these courts considered the post-agreement ratification of an oral assignment, not all of the cases limit their section 204(a) analysis in this way.  The language in *Billy-Bob* is broader than that of other courts and does not appear to limit its holding to a post-deal writing ratifying an oral agreement.  In that case, the court held that an alleged infringer who is not party to the transfer "does not having standing under § 204. . . . [W]here there is no dispute between the copyright owner and the transferee about that status of copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement'."  329 F.3d at 592-593 (quoting *Imperial Residential Design*, 70 F.3d at 99).  Similarly, in *Eden Toys*, the court noted that where "the copyright holder appears to have no dispute with its licensee on this matter, it would anomalous to permit a third party infringer to invoke [section 204(a)] against the licensee."  697 F.2d at 36.

Plaintiff attached a copy of a September 19, 2006 Memorandum of Assignment to its motion in limine.  Plaintiff argues that this memorandum is the sort of post-transfer writing that complies

with section 204(a) and bars Defendants from asserting ownership as a defense to Plaintiff's claims. The memorandum does not memorialize an oral agreement; by its own terms, the memorandum was created to resolve "doubt" about the ownership of the Copyrights and references several corporate transactions.  Plaintiff has also attached deposition testimony with its motion for partial summary judgment regarding the transfer of assets from Rayco to KB Home.

Defendants argue that the Memorandum was not even attached to the motion for partial summary judgment, that Plaintiff's evidence fails to establish that KB Homes owns the Copyrights, and that the court should sanction Plaintiff for failure to produce the Memorandum for two years. Defendants have attached portions of the January 1996 Purchase Agreement related to the sale of Rayco to its response.

The court notes first that while the Memorandum was not attached to the motion for partial summary judgment, the document was attached to Plaintiff's motion in limine as Exhibit A and referred to in both Plaintiff's motion and Defendants' response.  Therefore, the court considers the document and the parties' arguments.  It is clear that the Memorandum is not a post-deal writing that formalizes a prior oral agreement, so many of the cases cited by Plaintiff are inapposite.  The question, then, is whether Plaintiff has established its ownership and to what extent Defendants may dispute its ownership.

The rationale of section 204(a) is clearly to protect the parties to the transfer of a copyright. *Lyrick*, 420 F.3d at 392.  Accordingly, the court finds persuasive the reasoning of those courts that have limited a third-party infringer's right to dispute ownership.  As a district court in Oregon stated, "[A] stranger lacks standing to assert A's alleged rights against B when A declines to assert them himself.  The defendant had no right to infringe the copyright, regardless of whether it was owned

by A or B." *Fleming v. Miles*, 181 F. Supp. 2d 1143, 1158 (D. Or. 2001) (citing *Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996)).  Plaintiffs cite *Fleming* and argue that Defendants' argument regarding ownership of the Copyrights is no more than a red herring because the issue of whether a transfer was effected does not ultimately excuse Defendants' alleged infringement.

The court does not hold that Defendants are barred from raising section 204(a) as a defense under these particular facts; however, the court is mindful that other courts have refused to allow a third-party infringer to raise similar ownership issues where there is no dispute between the copyright owner and the transferee.  While Defendants raise several arguments to cloud the waters and attempt to create a fact issue as to ownership, Defendants have not provided any evidence that disputes Plaintiff's version of the transfer of the Copyrights to KB Home.

Plaintiff has established that Ken Gancarczyk ("Gancarczyk") created plans 2871 and 3265 while an employee of the entity that became Rayco.  Pl.'s App. 43, 46, 49-51.  Plaintiff argues that pursuant to 17 USC § 101, as an employee, the plans became the property of Rayco.  Gancarczyk testified that Rayco was acquired by KB Homes.  *Id*. at 43, 46.  Although Plaintiff has not provided every corporate document establishing the corporate transfers, Defendants attached portions of the Rayco purchase agreement that show that Kaufman and Broad Home Corporation paid the partners of Rayco more than $77 million to purchase interests in the limited and general partners of Rayco. Defs.' App. 9.  In the attached portions of the purchase agreement available to the court, the only reference to copyrights in the purchase agreement is a provision that provides that "Rayco has the right to *use* all . . . copyrights and other proprietary intellectual property rights necessary for the conduct of its business."  Defs.' Resp. App. (doc. 117), Ex. E § 4.2.12 (emphasis added).  There is no evidence before the court that the Copyrights were excluded from the sale of Rayco, just that

**Memorandum Opinion and Order - Page 11**

Rayco had a right to continue to use them.  The deposition testimony of the general counsel of KB Home at the time of the Rayco purchase establishes that KB Home purchased the Copyrights as part of the transaction.  Pl.'s App. 71.  The president of Rayco at the time of the purchase also testified that he "assume[d]" that the Copyrights were transferred to KB Home.  Pl.'s App. 80.  Finally, the Memorandum establishes that there is no existing dispute between the parties to the transfer that KB Home purchased and continues to own the Copyrights.

Defendants' attacks on the sufficiency of Plaintiff's evidence fail.  As alleged third-party infringers, Defendants have failed to show that the parties to the transfer dispute the ownership of the Copyrights.  Plaintiff has provided enough evidence for the court to determine under the facts before it, as a matter of law, that Plaintiff owns the Copyrights.  The court declines to sanction Plaintiff for failing to disclose the Memorandum because it is clear that the Memorandum was only signed a few days before the pretrial conference.  Accordingly, the court **grants** Plaintiff's motion as to the ownership of the disputed Copyrights and **denies as moot** Plaintiff's Motion in Limine to Preclude Defendants from Introducing Proof or Making Argument that KB Home Does Not Have a Written Assignment of Certain Copyrights.

### 2.      Validity of the Copyrights

Plaintiff argues that there is no genuine issue of material fact related to the validity of the Copyrights.  "Copyright ownership is shown by proof of originality and copyrightability in the work as a whole . . . ."  *Eng'g Dynamics*, 26 F.3d at 1340.  Plaintiff argues that there is categorical protection for architectural drawings, that the plans meet the "modicum of creativity" requirement, and that they were "independently created."  Defendants dispute that the plans at issue require the

"modicum of creativity" required for copyrightability or that Plaintiff can show the independent creation of plan 2693.

Defendants argue that the plans at issue in this case are "about the simplest, most basic floor plans one could ever imagine." Defs.' Resp. 14. Despite the alleged simplicity of the disputed plans, the threshold for creativity is low:

> Original, as the term is used in copyright, means only that the work was independently created by the author . . . , and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be.

*Feist Publ'ns, Inc. v. Rural Tel. Serv.*, 499 U.S. 340, 345 (1991) (internal citations and quotations omitted). The one case cited by Defendants, *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 388 n.8 (5th Cir. 1984), not only predates *Feist*, but simply notes that the question of copyrightability "is properly suited for the trier of fact." District courts determining originality at the summary judgment stage, however, have been affirmed. *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 142 (5th Cir. 1992).

The facts also establish that the plans have a "minimal degree of creativity," as even Defendants' proffered expert Jim Sealy has testified. Pl.'s App. 19. The only evidence in the record stating otherwise is a declaration from Defendant Ron Formby that states: "Based on my experience, regarding the KB Home floor plans at issue . . . , it is my opinion that the floor plans took less than a minimal degree of creativity to create." Defs.' App. 115. Formby's declaration does not include any objective or specific facts supporting his conclusion. The declaration is a single conclusory statement that the court may reject. *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996).

**Memorandum Opinion and Order - Page 13**

Defendants also argue that there is no evidence of "independent creation" of plan 2693 because Plaintiff first believed that plan 2693 was created after Antares plan 2743 and the copyright registration for plan 2693 states that the work was completed in 2000. Defs.' App. 82. Plaintiff argues that the earliest date on a drawing of plan 2693 is September 1999, *id*. at 100-102, and that Gancarcyzk testified that he created plan 2693 with Chris Matzke. Pl.'s App. 48. While Defendants dispute the date on which plan 2693 was created, they offer no competent summary judgment evidence to rebut Plaintiff's evidence that it was created in 1999.

The court concludes that the plans meet the requirements for a finding of validity, and that the plans, including plan 2693, were independently created. Accordingly, the court **grants** Plaintiff's motion as to the validity of the Copyrights.

### 3.      Copying of the Plans

Plaintiff also asks the court to enter summary judgment in its favor finding an inference of copying, that is, "proof that the defendant had access to the copyrighted work prior to creation of the infringing work and . . . probative similarity." *Peel,* 238 F.3d at 394. In terms of access, Defendants only dispute their access to plan 2693. Neither Plaintiff nor Defendants separately addresses the issue of probative similarity.

The court determines that a fact issue remains as to whether Defendants had access to plan 2693, but that no fact issue exists with regard to plans 2871, 240.2162.A2R, or 240.2693. Formby was employed by KB Homes until September 30, 1998. Defs.' App. 144. Formby also admits that after he started his own business, he had contact with KB Home employees, has been in KB Home models, visited various KB Home developments, and viewed plans of homes built by Plaintiff. Pl.'s App. 30-34. As the evidence before the court establishes the earliest date for plan 2693 was

**Memorandum Opinion and Order - Page 14**

September 1999, and there is no specific evidence that Formby had access to plan 2693 after he left

KB Homes, a fact issue remains as to his access to that plan.

The requirement to show "probative similarity" to support an inference of copying is distinct

from the finding of "substantial similarity" required for a finding of infringement:

> [T]he purpose of the probative similarity inquiry is to determine whether factual copying may be inferred and that this inquiry is not the same as substantial similarity. . . . [A] jury may find that two works are probatively similar if it finds any similarities between the two works (whether substantial or not) that, in the normal course of events, would not be expected to arise independently in the two works and that therefore might suggest that the defendant copied part of the plaintiff's work.

*Positive Black Talk*, 394 F.3d at 370.  Plaintiff argues that Defendants' plans are "strikingly similar"

to KB Homes's plans and that the court can infer copying from the similarity.

The court declines to find, as a matter of law, an inference of copying.  As noted in *Positive*

*Black Talk*, the issue of whether the plans are "probatively similar" is a fact determination better left

for the jury.  Accordingly, the court **grants in part** and **denies in part** Plaintiff's motion with

respect to copying.  While the court determines that Defendants had access to plans 2871,

240.2162.A2R, or 240.2693, and summary judgment is granted to that extent, fact issues remain as

to Defendants' access to plan 2693 and whether the allegedly copied plans have probative similarity

to Plaintiff's plans.

### 4.      Substantial Similarity and Infringement

Finally, Plaintiff asks the court to enter judgment in its favor with respect to Defendants'

alleged infringement.  The parties essentially repeat their arguments regarding the similarity of the

plans made in the initial summary judgment briefing.  As the court noted then,

**Memorandum Opinion and Order - Page 15**

> the overwhelming evidence from both sides presents a classic
> question of fact for the fact finder.  Reasonable minds, particularly
> minds of reasonable laypersons, could differ as to whether the
> designs are substantially similar. . . . [T]he court determines that a
> reasonable juror could find substantial similarity of the home designs.
> *See Peel*, 238 F.3d at 395.

Mem. Op. and Order (Dec. 29, 2005), 11-12.  Plaintiff has provided no evidence that requires the

court to determine that a jury *would* find substantial similarity.  Accordingly, the same result is

appropriate now; the ultimate issue of whether Defendants are liable for infringement is a question

for the jury.  The court **denies** Plaintiff's motion seeking summary judgment on infringement.

**IV.    Plaintiff's Objections and Appeal regarding Expert Jim Sealy**

Plaintiff also objects to and appeals Magistrate Judge Stickney's January 25, 2007 order

denying Plaintiff's Motion to Exclude the Testimony of Jim Sealy.  A district court may modify or

set aside a magistrate judge's ruling regarding nondispositive pretrial motions only if the ruling is

"clearly erroneous or contrary to law."  *See* Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A)

("A judge of the court may reconsider any [nondispositive] pretrial matter . . . where it has been

shown that the magistrate's order is clearly erroneous or contrary to law."); *Castillo v. Frank*, 70

F.3d 382, 385 (5th Cir. 1995).

Plaintiff argues that Judge Stickney's order was erroneous because (1) he limited Sealy's

testimony to the issue of "substantial similarity," (2) Sealy has testified to an incorrect standard of

copying, (3) Sealy's testimony regarding originality is contrary to law, and (4) Sealy does meet

*Daubert* standards as an expert on production home design.  Defendants argue that Judge Stickney's

order was correct, that Plaintiff fails to meet the standard of Rule 72(a), and that Plaintiff should

have sought clarification from Judge Stickney rather than appealing his order.

The court originally granted Plaintiff's pretrial motion to exclude the testimony of Sealy, but allowed Defendants the opportunity to retain a new expert or to obtain a new report from Sealy. Order (Oct. 3, 2006), 6. At the pretrial conference, the court made clear that an expert witness must use a correct legal standard and that testimony that relies on an incorrect legal standard would "confuse and mislead the jury." Trans. (Sept. 28, 2006), 46:4-5. Defendants chose to obtain a new report from Sealy and Plaintiff re-deposed Sealy on November 30, 2006. Plaintiff thereafter again moved to exclude Sealy's testimony. The magistrate judge denied Plaintiff's motion and stated that "the testimony should be subject to the limitation placed by Judge Lindsay's ruling that proper opinion testimony be limited to whether or not the items in question are substantially similar." Order (Jan. 25, 2007).

The court determines that Sealy's new report and deposition testimony establish some of the same problems that the court had with his first report, namely, that Sealy's opinions are not formed based upon the correct legal standards, but instead, upon what Sealy calls the "standard of an architect." For example, Sealy continues to insist that the concept of "originality" is "synonymous" with "unique." Sealy Dep. (Nov. 30, 2006), 189:14-190:3. Similarly, Sealy continues to require direct proof of copying, ignoring the test set out in this circuit for an inference of copying. *Id*. 200:10-23; *see also id.* 202:20-203:4. Although Sealy tempers this opinion later on in his deposition, he still testified that any copying that could be proved without direct evidence would be "improbable." *Id*. 220:226-23. These objections, however, are moot because the magistrate judge limited Sealy's testimony to the issue of substantial similarity.

Plaintiff does not argue that Sealy's testimony regarding substantial similarity is legally incorrect; rather, KB Homes argues that the court should not admit expert testimony on this issue

**Memorandum Opinion and Order - Page 17**

and that Sealy is unqualified as an expert on production homes.  Plaintiff argues that no expert testimony is appropriate on the subject of substantial similarity.  In this circuit, "the question of substantial similarity is typically left to the fact finders' own impressions.  Thus, a court could reasonably conclude that the views of persons not on the jury and not qualified to give an expert opinion on substantial similarity should not be admitted."  *Positive Black Talk*, 394 F.3d at 378; *see also Bridgmon*, 325 F.3d at 577 ("a determination of substantial similarity should typically be left to the fact-finder . . . .") (quoting *King v. Ames*, 179 F.3d 370, 375-376 (5th Cir. 1999)).

Defendants point out that in *Positive Black Talk*, the court cited a Ninth Circuit case held that "proof of substantial similarity is satisfied by a two-part test," and that the "extrinsic test often requires analytic dissection of a work and expert testimony."  *Three Boys Music Corporation v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000), *cert. denied*, 531 U.S. 1126 (2001).  Plaintiff, in turn, cites to cases from the Third and Sixth Circuits that hold that substantial similarity is an issue inappropriate for expert testimony.  *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 208 (3d Cir. 2005); *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 317 (6th Cir.), *cert. denied*, 543 U.S. 959 (2004).

The court determines that in this circuit, expert testimony may be admitted on the issue of substantial similarity.  In *Positive Black Talk*, the court specifically referred to excluding the views "of persons . . . not qualified to give an expert opinion on substantial similarity."  *Id*. at 378.  In this case, the alleged copyright infringement involves technical architectural drawings, and the court believes that expert testimony may aid and assist the jury in deciphering the plans and considering whether they are substantially similar.  While the ultimate determination of whether the plans are

**Memorandum Opinion and Order - Page 18**

substantially similar must be made by the jury, the Fifth Circuit has not foreclosed the use of expert testimony on this issue to assist the jury.

The remaining question is whether Sealy is qualified to testify.  Sealy has more than 40 years experience as an architect and has been involved in the design of single family homes.  R. at 99. Although Plaintiff complains that Sealy has no experience in the area of production homes, the court determines that his background and experience as an architect qualify him as an expert and that any shortcomings in his qualifications may be attacked by cross-examination or other means.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (brackets omitted) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).

Accordingly, the court **affirms** Judge Stickney's order.  The court will allow Sealy's testimony on the issue of whether there is substantial similarity between the KB Home and Antares plans, but Sealy may not testify as to the elements of originality or copying.  Plaintiff's objections are therefore **overruled**.

## V.    Conclusion

The court determines that there are no genuine issues of material fact remaining as to the elements of ownership of the Copyrights, validity of the Copyrights, or Defendants' access to plans 2871, 240.2162.A2R, or 240.2693.  Genuine issues of material fact remain with respect to:  (1) whether Defendants had access to plan 2693; (2) whether the KB Homes and Antares plans are probatively similar; (3) whether Defendants copied the KB Homes plans; (4) whether Defendants independently created the Antares plans; and (5) whether the KB Homes and Antares plans are

substantially similar.  For the reasons stated herein, the court **grants in part** and **denies in part** Plaintiff's Motions for Partial Summary Judgment,  **denies as moot** Plaintiff's Motion in Limine to Preclude Defendants from Introducing Proof or Making Argument that KB Home Does Not Have a Written Assignment of Certain Copyrights**, grants** Defendants' Motion to Strike, and **overrules** Plaintiff's Objections to and Appeal from Magistrate Stickney's Order and **affirms** Magistrate Stickney's January 25, 2007 order.

   **It is so ordered** this 28th day of June, 2007.

                                        Sam A. Lindsay
                                        United States District Judge

**Memorandum Opinion and Order - Page 20**